UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **TERRY AUSLEY, LINDA AUSLEY, and** | § | |
| **MARY LOUISE AUSLEY, Plaintiffs** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CROSS COUNTY WATER SUPPLY** | § | **CIVIL ACTION NO.  A09CA660SS** |
| **CORPORATION, BLUE WATER** | § | |
| **SYSTEMS, LP, BLUE WATER SYSTEMS** | § | |
| **GP LLC, ROSS M. CUMMINGS, PATRICK** | § | |
| **M. REILLY, KIT WORLEY, WAYNE** | § | |
| **BRINKLEY, SPITZER & ASSOCIATES,** | § | |
| **INC., and OMAR NASSAR, Defendants.** | § | |

## DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE SAM SPARKS, UNITED STATES DISTRICT COURT JUDGE :

Defendants Cross County Water Supply Corporation ("Cross County WSC" or "CCWSC"),

Blue Water Systems, L.P. and Blue Water Systems GP, LLC ("Blue Water"), Ross M. Cummings,

Patrick M. Reilly, Kit Worley, Wayne Brinkley, Spitzer & Associates, Inc., and Omar Nassar

(collectively "Defendants") file this Motion for Summary Judgment.  In support, Defendants show

the following:

### I. INTRODUCTION AND SUMMARY OF ARGUMENT

1.      On December 28, 2009, the Court entered an order granting summary judgment in

favor of Defendants and against Plaintiffs on their abuse of process claim.  *See* Dec. 28 Order

[Docket #41].  The Plaintiffs' remaining claims in their Second Amended Counterpetition are all

premised on the core allegation that Defendant Cross County WSC lacks the legal authority to

condemn property and thus representations to the Plaintiffs about CCWSC's legal condemnation

authority amount to fraud.[1]  *See* 2nd Am. Counterpetition at ¶¶ 20 – 24, 27 – 30.  Even assuming that

the Plaintiffs' skewed version of the facts is true, Plaintiffs' remaining causes of action fail as a

matter of law because  CCWSC plainly and lawfully possessed condemnation authority under TEX.

WATER CODE § 49.222(a) at all times following its formation in 2007.

      2.      In this Motion for Summary Judgment, the Defendants will demonstrate CCWSC's

legal condemnation authority to the Court.  Defendants will also identify other legal infirmities in

the Plaintiffs' claims that warrant summary judgment in Defendants' favor.

## II. FACTUAL BACKGROUND

      3.      Decades ago, the Texas Legislature established a statutory framework authorizing

the creation of water supply corporations to provide safe and reliable drinking water for public

needs.  *See generally*, TEXAS WATER CODE, Chapter 67.  Since that time, hundreds of non-profit

water supply corporations ("WSC") have been created throughout Texas to transport and provide

drinking water to the public.  **Exhibit A** - Affidavit of Patrick M. Reilly at ¶ 4.

      4.      Defendant CCWSC is a duly-organized non-profit water supply corporation

organized and operating under Chapter 67 of the TEXAS WATER CODE.[2]  **Exhibit A** at ¶ 2; **Exhibits

A-1** and **A-2**.  CCWSC was formed on September 26, 2007 and is in good standing with the Texas

Secretary of State's Office.  *Id*; **Exhibit A-3**.  CCWSC is organized for the purpose of providing

water supply.  *Id*. At all times since its formation on September 26, 2007, CCWSC's purpose has

been to provide water supply.  *Id*.

      5.      As stated in CCWSC's corporate formation documents, CCWSC's purpose is to

---

[1]  The Ausleys' remaining claims are for (1) fraudulent representation; (2) fraudulent nondisclosure; (3) racketeering under 18 U.S.C. § 1964 in which mail fraud is the alleged predicate act; and (4) civil conspiracy. The Ausleys also seek certain declarations under the Texas Uniform Declaratory Judgment Act that are redundant – and thus unnecessary – of their fraud and racketeering claims.

[2]  CCWSC's Texas Water Code authority is also supplemented by the Texas Non-Profit Corporation Act, TEX. CIV. STAT., Article 1396-1.101,et seq., as amended.  *See* **Exhibits A-1 and A-2**.

provide a water supply to "political subdivisions, governmental agencies, corporations, or other persons or entities." **Exhibits A-1** and **A-2**. CCWSC provides water supply to its customers on a wholesale-only basis. **Exhibit A** at ¶¶ 5, 8 . CCWSC does not provide, nor is it required to provide, water utility service on a ***retail*** basis to ultimate consumers of its water. *Id.* Tᴇx. Wᴀᴛᴇʀ Cᴏᴅᴇ § 13.002(20); Tᴇx. Wᴀᴛᴇʀ Cᴏᴅᴇ § 67.002(1).

6.      The Texas Commission on Environmental Quality ("TCEQ"), in accordance with its rules and statutory authorizations, has certified CCWSC as a Regional Provider of Water Service. **Exhibit A** at ¶ 5; *see also* **Exhibit A-4**. Consistent with its status as a TCEQ Regional Provider of Water Service, CCWSC is currently undertaking a regional wholesale water supply pipeline project to provide groundwater from the Carrizo-Wilcox Aquifer[3] in Burleson County to several retail public utilities[4] in Travis and Williamson Counties that provide water service for thousands of customers. **Exhibit A** at ¶ 5. CCWSC's 53 mile water supply pipeline begins in south Burleson County and terminates at the ShadowGlen elevated storage tank near Manor, Texas. **Exhibit A** at ¶ 6. After a lengthy permit application process lasting more than a year, the United States Army Corps of Engineers has issued a Clean Water Act Section 404 permit to CCWSC for the entire 53 mile water supply pipeline. *Id.***; Exhibit A-5.**

7.      The CCWSC water supply pipeline has an inside diameter of 30" and a capacity of 18 million gallons per day ("MGD"), which is sufficient to serve approximately 120,000 people. CCWSC has obtained financing for construction of the water supply pipeline, has acquired

---

[3]  The Carrizo-Wilcox Aquifer is one of the largest and most prolific aquifers in Texas. *See* 2007 Sᴛᴀᴛᴇ Wᴀᴛᴇʀ Pʟᴀɴ, Dᴏᴄᴜᴍᴇɴᴛ Nᴏ. GP-8-1, Tᴇx. Wᴀᴛᴇʀ Dᴇᴠ. Bᴅ. at 193 (January 2007) available on the Texas Water Development Board's website at: http://www.twdb.state.tx.us/wrpi/swp/swp.htm

[4]  A "retail public utility" is generally the type of water utility that provides potable water service to end users — such as homes, businesses and other establishments — for compensation. It is specifically defined to mean: "any person, corporation, public utility, water supply or sewer service corporation, municipality, political subdivision or agency operating, maintaining, or controlling in this state facilities for providing potable water service or sewer service, or both, for compensation." Tᴇx. Wᴀᴛᴇʀ Cᴏᴅᴇ § 13.002(19).

---

easements for more than 92% of the parcels necessary for construction of the pipeline,[5] and will commence construction of the pipeline on or about June 1, 2010. **Exhibit A** at ¶ 6. When completed in 2011, the CCWSC water supply pipeline will provide wholesale water supply and transportation needs for several retail public utilities in Travis and Williamson Counties, including City of Manor, SouthWest Water Company, Manville Water Supply Corporation and the City of Pflugerville. **Exhibit A** at ¶ 6.  The water supply provided by the CCWSC pipeline will help replace unreliable and undesirable water supplies in high growth areas of Travis and Williamson Counties. Substantial portions of those existing supplies are drawn from shallow alluvial wells that have poor water quality and are susceptible to drought. **Exhibit A** at ¶ 7.

### III. SUMMARY JUDGMENT EVIDENCE

8.      Defendants incorporate the following attachments:

**Exhibit A**       Affidavit of Patrick Reilly

**Exhibit A-1**    Original Certificate of Formation of Cross County WSC

**Exhibit A-2**    Amended and Restated Certificate of Formation of Cross County WSC

**Exhibit A-3**    Certificate of Good Standing of Cross County WSC

**Exhibit A-4**    Letter from the TCEQ dated October 8, 2008 designating CCWSC as a Regional Water Provider

**Exhibit A-5**    U.S Army Corps of Engineers Section 404 Permit for Cross County WSC Project Number SWF-2006-00520

### IV. ARGUMENT

**A.      Summary Judgment Standard.**

9.      The standard for granting summary judgment is well known to this Court.  Summary judgment may be granted if the moving party shows that there is no genuine issue of material fact,

---

[5] CCWSC has obtained all necessary pipeline easement rights from other landowners in the vicinity of the Ausleys so that the CCWSC water supply pipeline will completely bypass the Ausley Property.  **Exhibit A** at ¶ 9.

and it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant makes an initial showing that there is no genuine issue of any material fact and judgment should be entered as a matter of law, the nonmoving party must then come forward with competent evidentiary materials establishing a genuine fact issue for trial and may not rest upon the mere allegations of its pleadings. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); FED. R. CIV. P. 56(e). The moving party need not *negate* the elements of the nonmovant's case. *Celotex*, 477 U.S. at 323; *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

**B.      The Texas Water Code Provides Condemnation Authority for CCWSC.**

10.      Under Texas law, water supply corporations are specifically authorized to: (1) own, hold, lease, or otherwise acquire water wells, springs, or other sources of water supply; (2) ***build, operate, and maintain pipelines to transport water*** or wastewater; (3) build and operate plants and equipment necessary to distribute water; and (4) sell water to a political subdivision, a private corporation, or an individual.[6] TEX. WATER CODE § 67.011.

11.      In furtherance of these authorized purposes, the legislature has explicitly provided water supply corporations with condemnation authority. Since 1995, the Texas Water Code in its current form has provided:

> A district or water supply corporation may acquire by condemnation any land, easements, or other property inside or outside the district boundaries, or the boundaries of the certificated service area for a water supply corporation, necessary for water . . . purposes or for any other of its projects or purposes, and may elect to condemn either in fee simple title or a lesser property interest.

---

[6] Water supply corporations are specifically authorized to enter into contracts with "any political subdivision, federal agency, or other entity for the acquisition, construction, or maintenance of a project or improvement for an authorized purpose." TEX. WATER CODE § 67.010(a).

TEX. WATER CODE § 49.222(a).[7]  By its plain language, the legislature has provided Texas WSCs with condemnation authority for water supply purposes, including the specifically authorized purpose of pipeline construction and operation. TEX. WATER CODE § 67.011. Thus, as a duly-organized WSC, CCWSC was vested with lawful condemnation authority upon its initial formation in 2007 and has held that condemnation authority ever since.[8]

12.     The Plaintiffs ignore the plain language of § 49.222(a), and instead claim there are other factors that prevent CCWSC from exercising condemnation authority.  As a matter of law, those other factors are either irrelevant or wrong.

**1.     Water Supply Corporations are not divested of their statutory condemnation authority for projects serving the public good simply because private interests may benefit as well.**

13.     The Plaintiffs claim that unspecified "private financial interests" of certain Defendants undermine CCWSC's condemnation authority.  *See* Sec. Am. Counterpet. at ¶ 15. The Plaintiffs have not explained what those alleged interests are and how they supposedly negate CCWSC's condemnation authority. Regardless, under settled Texas law, the legislature's delegation of condemnation authority to designated entities[9] (such as WSCs) for use on a project with public benefits — such as a regional pipeline project — is not prohibited simply because there is an ancillary private benefit. *West v. Whitehead*, 238 S.W. 976, 978 (Tex.Civ.App.– San Antonio 1922,

---

[7] Chapter 49 of the Texas Water Code is the general law applicable to all water districts in Texas, including water supply corporations. TEX. WATER CODE § 49.001 *et seq.*

[8] Chapter 67 of the Texas Water Code, which is the general law applicable to WSCs, provides that, "Three or more individuals who are citizens of this state may form a corporation by making an application to the secretary of state in the same manner as provided by law for an application for a private corporation."

[9] Even wholly private, for-profit entities such as electric, gas and railroad companies have eminent domain authority for certain public purposes such as pipelines, transmission lines or other means of conveyance with obvious benefits to the public.  *See, e.g., West v. Whitehead*, 238 S.W. 976 (Tex.Civ.App.– San Antonio 1922, writ ref'd)(upholding condemnation of land by private railroad corporation); *Mercier v. Midtexas Pipeline*, 28 S.W.3d 712 (Tex.App. — Corpus Christi, 2000, pet. denied)(upholding condemnation of land by private gas company).

writ ref'd)("The mere fact that the advantage of the use inures to a particular individual or enterprise, or group thereof, will not deprive it of its public character.")

14.     By adoption of TEX. WATER CODE § 49.222(a), the legislature made a determination that water supply corporations serve an important public purpose in providing water service for the public and that condemnation power can be used to effect those authorized purposes, including construction and operation of "pipelines to transport water." TEX. WATER CODE § 67.011.  Absent allegations that the condemnor acted arbitrarily or unjustly, that legislative determination is "conclusive" and presents a non-justiciable political question. *See, e.g., Coastal Industrial Water Authority v. Celanese Corp. of America*, 592 S.W.2d 597, 600 (Tex. 1979).

15.     Nevertheless, the Plaintiffs apparently contend that if ***any*** private interest benefits from CCWSC's pipeline project, the ***entire project*** is automatically converted to a private use.  That is simply not the law. In reviewing a complaint that a particular use sanctioned by the legislature is, in fact, private, Texas law holds that the legislative declaration that a use is public must be given great weight.  *Tenngasco Gas Gathering Co. v. Fischer*, 653 S.W.2d 469, 475 (Tex. App.–Corpus Christi 1983, writ ref'd n.r.e.) (citing *Housing Authority of the City of Dallas v. Higginbotham*, 135 Tex. 158, 143 S.W.2d 79 (Tex. 1940) and *West v. Whitehead*, 238 S.W. 976 (Tex.Civ.App.– San Antonio 1922, writ ref'd).  Such a declaration is binding on the court unless it is manifestly wrong or unreasonable, or the purpose for which the declaration is enacted is clearly and palpably private. *West*, 238 S.W. at 978.  In reviewing the public use in question,  it is the *character* of the right which inures to the public, not the *extent* to which the right is exercised, that is important in evaluating enterprises which are involved in condemning private property. *Id.*

16.     Here, taking Plaintiffs' allegations that private interests will benefit from CCWSC's pipeline project as true, TEX. WATER CODE § 49.222(a) represents a legislative declaration that, as a matter of law, water supply corporations and their water supply projects are  public uses.  Whether

private interests will benefit from CCWSC's pipeline project is irrelevant as long as the public will benefit from the regional water supply pipeline once operational. *Tenngasco*, 653 S.W.2d at 475. In the case of CCWSC's pipeline, the public benefit from transporting a much needed resource — drinking water from areas of supply (Burleson County) to areas of need (Travis and Williamson Counties) — is manifest. *See* **Exhibit A** at ¶ 7**;** *Mercier*, 28 S.W.3d at 719 (upholding pipeline condemnation by private gas company, noting the legislatively-recognized public benefit of moving resources from areas of supply to areas of demand). This important public benefit is evident in CCWSC's formation documents. *See* **Exhibit A; Exhibit A-1** and **A-2.** From the outset, the provision of a water supply to various members of the public was and is CCWSC's purpose. *Id.*

17.     Under Texas law, that is all that is required — and with good reason. Under the Plaintiffs' misguided theory, any time someone financially benefitted from a water pipeline, gas pipeline, electric transmission line, or railroad line, that water, gas, electric or railroad corporation would lose its condemnation authority. Fortunately, that is not the law in Texas because, if it were, there would be millions of people in this state without water, power, gas and rail service.

**2.     CCWSC is not required to have a CCN to exercise its condemnation authority.**

18.     The Plaintiffs also claim in their Second Amended Counterpetition that a regulatory authorization is needed for CCWSC to invoke its condemnation authority. *See* 2nd Am. Counterpetition at ¶ 15. The Plaintiffs appear to believe that a TCEQ-issued Certificate of Convenience and Necessity ("CCN") is the authorization required. *See* 2nd Am. Counterpetition at ¶¶ 15, 31.a. The Plaintiffs are mistaken. The CCN sometimes required for water supply corporations is only required to supply *retail* water utility service. TEX. WATER CODE § 13.242(a). In contrast, CCWSC was formed to provide a *wholesale* supply of water on a regional basis for separate retail water providers. Possession of a CCN is not a prerequisite for CCWSC's condemnation authority and is not required by TEX. WATER CODE § 49.222(a). TEX. WATER CODE

§ 49.222(a) must be harmonized with the CCN requirements of TEX. WATER CODE § 13.242(a).[10]

19.     In contrast, TCEQ's approval of CCWSC as a certified Regional Provider of Water Service further refutes Plaintiffs' claim that CCWSC's project will not serve public interests. **Exhibit A-4**. The Texas Water Code, Chapter 15, defines "regionalization" as "development of a water supply . . . system that incorporates multiple service areas into an area-wide service facility or any such system that serves an area that includes more than a single county, city, special district, or other political subdivision of the state." TEX. WATER CODE § 15.001(13). The Texas Tax Code provides a tax exemption for "equipment, services, or supplies used solely to construct or operate a water . . . system certified by the Texas Commission on Environmental Quality as a regional system." TEX. TAX CODE § 151.355(5). TCEQ's certification that CCWSC is a Regional Provider of Water Service further shows that its pipeline system will serve a public use.

### 3.     CCWSC's lawful condemnation authority renders any representations about that authority truthful.

20.     In sum, even taking all of Plaintiffs' outlandish allegations as true, CCWSC has at all relevant times possessed condemnation authority provided by the Texas Water Code in order to facilitate its water supply pipeline project. Therefore, because all representations regarding CCWSC's condemnation authority were true when made, those representations cannot form the basis for the fraud, fraudulent non-disclosure, racketeering and conspiracy claims asserted by the Plaintiffs. The Plaintiffs' claims thus fail as a matter of law.

## C.     Plaintiffs' Claims Fail for Multiple Other Reasons.

21.     Plaintiffs' allegations in support of their remaining causes of action have other fatal

---

[10]  Even CCWSC's wholesale customers do not necessarily need a CCN to provide retail water utility service because not all retail public utilities are required to hold a CCN to provide retail water service. TEX. WATER CODE § 13.242(a). For instance, municipalities such as Manor and Pflugerville are not required to have a CCN to provide retail water service. CCWSC is prohibited from making CCN possession a condition for receiving CCWSC wholesale water. *Id.*; TEX. WATER CODE § 13.242(d).

flaws.  For these additional reasons, summary judgment in the Defendants' favor is appropriate.

22.    Fraud claims are subject to a heightened pleading standard which Plaintiffs have not met.  FED. R. CIV. P. 9(b).  Plaintiffs' Second Amended Complaint fails to state with particularity the circumstances surrounding the fraud allegedly perpetrated by each Defendant sued.  *Id.*  A party averring fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent when made."  *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2002) (citations omitted).    Plaintiffs' Second Amended Complaint fails to meet this requirement. Plaintiffs' claims of "fraudulent representation" and "fraudulent nondisclsoure" should be dismissed as a matter of law.

23.    Likewise, Plaintiffs have failed to properly set forth allegations supporting their RICO claim.  Plaintiffs' allegations do not plausibly suggest a "pattern of racketeering activity," which requires evidence of at least two predicate acts of racketeering that are related and amount to or pose a threat of continued criminal activity.  *See* 18 U.S.C. § 1961(5); *see also St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009).   No specific facts are alleged to support conclusory statements that Defendants "used the United States mail in furtherance of their fraudulent schemes;" that any criminal act was committed; or that there is a threat of continued criminal activity.  *Id.* There is no specification of the organized "enterprise" Plaintiffs allege the Defendants participated in that is separate from CCWSC, a named Defendant; Plaintiffs have no evidence of such an "enterprise."  *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989); *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441(5th Cir. 1988).  Plaintiffs do not explain how alleged racketeering activity proximately caused them to spend money on appraisal fees, their alleged injury.  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006).  Finally, RICO claims alleging fraud are subject to the same heightened FED. R. CIV. P. 9(b) pleading standards as other fraud claims, and, as

previously mentioned, Plaintiffs have not complied with those standards. *Tel-Phonic Services, Inc. v. TBS International, Inc.*, 975 F.2d 1134, 1138-1138 (5th Cir. 1992). In short, Plaintiffs' RICO allegations are conclusory, lack evidentiary and legal support, and should be dismissed as a matter of law.

24.     Plaintiffs' fraud claims have additional problems that warrant summary dismissal. With respect to Plaintiffs' "fraudulent representation" claim, there is no specific allegation that their appraisal fees were incurred in reliance on any type of representation made by the Defendants, nor do Plaintiffs have evidence of same. *Johnson & Higgins of Texas, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998); *Green v. Gemini Exploration Co.*, No. 03-02-00334-CV, 2003 WL 1986859, at * 4 (Tex. App.– Austin May 1, 2003) (memorandum opinion). With respect to Plaintiffs' "fraudulent nondisclosure" claim, the Texas Supreme Court has repeatedly held that a failure to disclose information is equivalent to a false representation only when particular circumstances impose a duty on a party to speak or disclose information, and the party remains deliberately silent. *International Profit Associates, Inc.*, 274 S.W.3d 672, 678 (Tex. 2009); *Bradford v. Vento*, 48 S.W.3d 749, 754-755 (Tex. 2001). Plaintiffs have failed to allege the required duty or circumstances that created such a duty. For these reasons, both fraud claims fail as a matter of law and should be dismissed.

25.     That leaves Plaintiffs' civil conspiracy claim and their request for a declaratory judgment. Without the viability of the aforementioned claims, these additional claims fail too.

26.     Civil conspiracy is a "derivative tort" dependent on injury to the plaintiff resulting from an act done pursuant to the common purpose. *Tilton v. Marshall*, 925 S.W.2d 672, 680-681 (Tex. 1996); *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925 (Tex. 1979); *see also TRI v. J.T.T. and M.T.*, 162 S.W.3d 552, 556 (Tex. 2005) (setting forth elements of civil conspiracy claim). Therefore, requests for dismissal of civil conspiracy causes of action are not analyzed separately

from requests to dismiss other causes of action.  *Tilton*, 925 S.W.2d at 680-681. Without evidence to support Plaintiffs' other claims against the Defendants, Plaintiffs' civil conspiracy claim fails as a matter of law.

27.      A declaration under the UDJA is only appropriate if there is a justiciable controversy and the controversy between the parties will be resolved by the declaration sought.  *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467-468 (Tex. 1995); *Myer v. Americo Life, Inc.*, No. A-06-CA-599 LY, 2007 WL 320960, at *5 (W.D. Tex. Jan. 30, 2007); *see also* TEX. CIV. PRAC. & REM. CODE §37.002(b).  There must be a genuine conflict of tangible interests and not merely a theoretical dispute.  *Id.*

28.      Here, the Plaintiffs have asserted two requests for declaratory judgment under the UDJA that simply mimic the factual allegations underlying the Plaintiffs' fraud and RICO claims. They are not true declarations of law, but instead are declarations of Plaintiffs' version of the facts inserted as an attempted means to recover attorney's fees.

29.      Plaintiffs have no viable causes of action remaining in this case.  Therefore, summary judgment against the Plaintiffs and in favor of all Defendants is proper.

## V. CONCLUSION

Defendants, Cross County Water Supply Corporation, Ross M. Cummings, Patrick M. Reilly, Kit Worley, Wayne Brinkley, Spitzer & Associates, Inc., Omar Nassar, Blue Water Systems, LP and Blue Water Systems GP LLC, respectfully request that the Court grant this Motion for Summary Judgment, enter final judgment that Plaintiffs Terry Ausley, Linda Ausley and Mary Louise Ausley take nothing in their suit against the Defendants.  Defendants respectfully request the Court order the Plaintiffs to pay the Defendants' reasonable attorney's fees and costs, charge all taxable costs of court against Plaintiffs, and award the Defendants all other relief to which they are

entitled at law or in equity.

**Respectfully submitted,**

**THE TERRILL FIRM, P.C.**


By: /s/ Paul M. Terrill
        Paul M. Terrill III
        State Bar No. 00785094
        Geoffrey P. Kirshbaum
        State Bar No. 24029665
        810 West 10th Street
        Austin, Texas  78701
        Tel:  (512) 474-9100
        Fax:  (512) 474-9888

**ATTORNEY FOR BLUE WATER SYSTEMS, L.P. AND BLUE WATER SYSTEMS GP, LLC**


By: /s/ Randy Howry
        Randy Howry
        HowryBreen, L.L.P.
        1900 Pearl Street
        Austin, TX 78705
        Tel: (512) 474-7300
        Fax: (512) 474-8557

**ATTORNEY FOR CROSS COUNTY WSC, ROSS M. CUMMINGS, PATRICK M. REILLY, KIT WORLEY, WAYNE BRINKLEY. SPITZER & ASSOCIATES, INC., AND OMAR NASSAR**

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2010, I electronically filed the forgoing with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Bill Youngkin
Ty Clevenger
Jeffrey Burns
YOUNGKIN & ASSOCIATES
P.O. Box 4806
Bryan, Texas 77805
Fax: (979) 268-3037

**ATTORNEYS FOR TERRY AUSLEY, LINDA AUSLEY AND
MARY LOUISE AUSLEY**

/s/ Paul M. Terrill_____
Paul M. Terrill